UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - X
TTO DRILLING CO., INC.,

               Plaintiff,

         - against -

JUDITH L. HOPKINSON,

               Defendant.
- - - - - - - - - - - - - - - - - - X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 10/17/14

14 Civ. 996 (LLS)

**OPINION & ORDER**

    Defendant Judith L. Hopkinson moves to dismiss the
complaint pursuant to Fed. R. Civ. P. 12(b) for lack of personal
jurisdiction and for failure to state a claim on which relief
can be granted, and to dismiss or stay the action pursuant to
the anticipatory filing doctrine or Colorado River[1] abstention.
For the reasons that follow, this Court has personal
jurisdiction over Hopkinson in this matter; the motion to
dismiss for failure to state a claim is granted; and
accordingly, it is unnecessary to consider Hopkinson's argument
for abstention.

## FACTS

    Plaintiff TTO Drilling Co., Inc. ("TTO") sues for payment

---

[1] Colo. River Water Conservation Dist. v. United States, 424 U.S. 800, 96 S.
Ct. 1236 (1976).

-1-

of accelerated balances of two notes executed by defendant Judith L. Hopkinson.

In 2002 and 2003 Hopkinson, a California resident, entered agreements to purchase interests in two partnerships: the Silver Spike Drilling Company and the Colt Drilling Company. Compl. ¶¶ 2, 4, 22, ECF No. 2. Hopkinson executed a promissory note in each transaction. Compl. ¶¶ 5-6, 23-24. The notes contained identical language that they would be "assigned, pledged and hypothecated by the Partnership to TTO Drilling Co., Inc. as security of partnership indebtedness." Compl. ¶¶ 9, 27. The assignments were effectuated by "Turnkey Drilling Contracts" between each of the partnerships and TTO. Compl. ¶¶ 10, 28. Both of the Turnkey contracts stated

> As collateral for the payment of the Turnkey Note (together hereinafter referred to as the "Note"), and for the payment and performance of all liabilities and obligations of [the partnership] to [TTO], [the partnership] pledges, transfers, assigns, grants a security interest in and delivers to [TTO] all of his right, title and interest . . . [in] the Subscription Notes of the Partners . . . .

Compl. Exs. C at 2-3, F at 2.

The subscription notes defined certain "Events of Default," including:

> the issuance of any writ of garnishment, or writ of attachment, or writ of injunction, or summons against the holder of this Note in connection with any suit or controversy involving the Maker, any surety, endorser

-2-

            or guarantor of the Note, or to which the Maker, any
            surety, endorser or guarantor of the Note may be made
            a party, or in any of said events.

Compl. ¶¶ 14, 32. Each subscription note also stated that

"[u]pon the occurrence of any such Event or Default, all of the

unpaid principal balance hereof, together with unpaid interest

accrued shall, at the election of the holder hereof, and without

notice, immediately become due and payable." Compl. ¶¶ 15, 33.

        In 2010, Hopkinson brought an action in the United States

District Court for the Southern District of New York, naming the

notes' holder TTO as a defendant. Compl. ¶ 16-17. TTO was served

with the summons and complaint. Compl. ¶ 17. The suit was

dismissed as time-barred. Hopkinson v. Estate of Siegal, No. 10

Civ. 1743 (LBS), 2011 WL 1458633, at *7 (S.D.N.Y. Apr. 11,

2011), aff'd, 470 F. App'x 35 (2d Cir. 2012).

        TTO now argues that the commencement of the 2010 action by

Hopkinson, the notes' maker, constituted an "Event of Default"

triggering the notes' acceleration clauses and giving TTO the

right to immediate payment of the principal amount of the notes.

Compl. ¶¶ 18-19, 36-37.

### DISCUSSION

### Personal Jurisdiction

        Hopkinson moves to dismiss the complaint for lack of

personal jurisdiction. In a diversity action, the district court

-3-

resolves this question under the law of the state in which it sits. D.H. Blair & Co. v. Gottdiener, 462 F.3d 95, 104 (2d Cir. 2006).[2]

On a Rule 12(b)(2) motion made before discovery, plaintiff has to make only a prima facie showing of personal jurisdiction, and all pleadings and affidavits are construed in its favor. PDK Labs, Inc. v. Friedlander, 103 F.3d 1105, 1108 (2d Cir. 1997).

TTO contends that Hopkinson, a California resident, is subject to specific personal jurisdiction pursuant to N.Y. C.P.L.R. 302(a)(1) (McKinney 2010), which provides:

> As to a cause of action arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any non-domiciliary, or his executor or administrator, who in person or through an agent:
> 1. transacts any business within the state or contracts anywhere to supply goods or services in the state . . . .

Under 302(a)(1), "long-arm jurisdiction over a nondomiciliary exists where (i) a defendant transacted business within the state and (ii) the cause of action arose from that transaction of business. If either prong of the statute is not met,

---

[2] The exercise of personal jurisdiction must also comport with the requirements of due process. See Gucci Am., Inc. v. Weixing Li, No. 11-3934-CV, 2014 WL 4629049, at *11 (2d Cir. Sept. 17, 2014). However, Hopkinson argues against personal jurisdiction solely on statutory grounds.

-4-

jurisdiction cannot be conferred under C.P.L.R. 302(a)(1)."
Johnson v. Ward, 4 N.Y.3d 516, 519, 829 N.E.2d 1201, 1202
(2005).

Starting with the first element, Hopkinson "transacted
business" in New York by starting and conducting the 2010 action
in the Southern District of New York and participating in that
lawsuit as far as it went. See Compl. ¶¶ 16-17.

"A nondomiciliary 'transacts business' under C.P.L.R.
302(a)(1) when he 'purposefully avails [himself] of the
privilege of conducting activities within [New York], thus
invoking the benefits and protections of its laws.' " CutCo
Indus., Inc. v. Naughton, 806 F.2d 361, 365 (2d Cir. 1986)
(alterations in original) (quoting McKee Electric Co. v.
Rauland-Borg Corp., 20 N.Y.2d 377, 382, 229 N.E.2d 604, 607
(1967)) (internal quotation marks omitted).

Hiring an attorney and participating in litigation can
constitute "transacting business." In Fischbarg v. Doucet, 9
N.Y.3d 375, 880 N.E.2d 22 (2007), a suit for the payment of
legal fees, the New York Court of Appeals found that California
residents, who were never physically present in New York,
transacted business within the state by engaging a New York
attorney to file a lawsuit in Oregon. The court focused on
communications the defendants directed into New York:

-5-

[D]efendants repeatedly communicated with plaintiff in New York. According to plaintiff, over the course of approximately nine months (May 2001 through January 2002) during his representation of [one defendant] in the Oregon action, he spoke with defendants by telephone at least twice per week regarding their case. Plaintiffs time records also show that on at least 31 occasions defendants sent e-mails regarding the Oregon case to plaintiff, that on three occasions they faxed materials to him, and that defendants sent plaintiff documents, by either mail or e-mail, seven times.

Id. at 378, 880 N.E.2d at 24-25 (footnotes omitted).

Here, Hopkinson retained New York attorneys (the same law firm representing her in this present action) to bring an action in the United States District Court for the Southern District of New York in 2010. See Emont Decl. ¶¶ 8, 10, ECF No. 19. In that action, Hopkinson claimed that she was fraudulently induced to invest in the partnerships and named TTO as a defendant. Id. Ex. 4. The court dismissed the action as time-barred, but not before allowing limited discovery. Id. ¶ 14.

The extent of Hopkinson's communication with her attorneys is not revealed in the current record. However, unlike the clients in Fischbarg, Hopkinson was physically present in New York several times in connection with the lawsuit. She attended depositions in New York on four days in November and December of 2010. Id. ¶ 16. She was also present at oral arguments before both the district court and the Second Circuit. Id.

-6-

Hopkinson cites <u>Andros Compania Maritima S.A. v.</u>
<u>Intertanker Ltd.</u>, 714 F. Supp. 669, 675 (S.D.N.Y. 1989), and
<u>Uzan v. Telsim Mobil Telekomunikasyon Hizmetleri A.S.</u>, 51 A.D.3d
476, 477, 856 N.Y.S.2d 625, 626 (2008), where courts held that
sporadic litigation in New York is not "doing business" under
C.P.L.R. 301. But "doing business" under C.P.L.R. 301, where
jurisdiction follows from a general and continued course of
activity in the state, is not the same things as "transacting
business" under C.P.L.R. 302(a)(1), where jurisdiction over a
specific transaction arises from the conduct of the transaction
itself.

As for the second element of C.P.L.R. 302(a)(1), the
condition giving rise to TTO's present action was caused by
Hopkinson bringing the 2010 action. The 2010 action is essential
to TTO's claim, for without it TTO would have no claim of
acceleration of payments on the notes. In the words of C.P.L.R.
302(a), the present case is "a cause of action arising
from . . . the acts" of Hopkinson in bringing and prosecuting
the 2010 action, which caused the acceleration of payments.

This court has specific jurisdiction over Hopkinson under
C.P.L.R. 301(a)(1) because she transacted business within New
York by filing the 2010 action and this plaintiff's cause of
action rests on that business transaction.

-7-

Hopkinson's motion to dismiss for lack of personal jurisdiction is denied.

**Failure to State a Claim upon which Relief Can Be Granted**

Hopkinson argues that TTO has failed to state a valid claim because "TTO has not alleged Silver Spike or Colt has defaulted on their monetary obligations to TTO——which is a prerequisite for TTO to collect on the Notes that constitute collateral security for those obligations." Def.'s Mem. Supp. Mot. Dismiss 12, ECF No. 12.

According to the Restatement (Second) of Contracts § 328(1) (1981) (emphasis added):

> Unless the language or the circumstances indicate the contrary, as in an assignment for security, an assignment of "the contract" or of "all my rights under the contract" or an assignment in similar general terms is an assignment of the assignor's rights and a delegation of his unperformed duties under the contract.

Here, both the subscription notes and the Turnkey contracts state explicitly that the notes were assigned to TTO as security for the partnerships' Turnkey Notes and other obligations to TTO. See Terwilliger v. Terwilliger, 206 F.3d 240, 245 (2d Cir. 2000) ("Under New York law, a written contract is to be interpreted so as to give effect to the intention of the parties as expressed in the unequivocal language they have employed."). Accordingly, regardless of Hopkinson's alleged acceleration of

-8-

payment on the subscription notes, TTO cannot enforce the payment provisions of a subscription note while Silver Spike and Colt's Turnkey obligations to TTO are not in default. Cf. <u>Aaron Ferer & Sons Ltd. v. Chase Manhattan Bank, Nat. Ass'n</u>, 731 F.2d 112, 125 (2d Cir. 1984) (assignment of rights in copper as security for antecedent debt does not divest assignor of right to sue and enforce its own rights in the copper, while "an unequivocal and complete assignment" would extinguish those rights); <u>Berg v. Cacoulidis</u>, 114 A.D.2d 986, 987, 495 N.Y.S.2d 426, 427-28 (1985) (mortgage securing a $450,000 debt was assigned to Berg as collateral for a $174,000 note; Berg could not foreclose on the mortgage because the payments on the $450,000 debt that the mortgage secured were not in default); <u>Fifty States Mgmt. Corp. v. Pioneer Auto Parks, Inc.</u>, 44 A.D.2d 887, 888, 355 N.Y.S.2d 856, 858 (1974) ("Where, as here, an assignment is given as security only, then the assignee's right against the obligor is conditional on the nonperformance of the duty to which the assignment is collateral.").

Relief cannot be granted on TTO's claim because the Turnkey Notes and other obligations (which the subscription notes secure) are not in default.

-9-

Accordingly Hopkinson's motion, to dismiss the complaint for failure to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6), is granted.

**CONCLUSION**

Defendant Judith L. Hopkinson's motion to dismiss or stay the complaint (Dkt. No. 11) is granted. The complaint (Dkt. No. 2) is dismissed.

So ordered.

Dated:   New York, New York
         October 17, 2014

                                   _Louis L. Stanton_
                                   LOUIS L. STANTON
                                   U.S.D.J.